UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN DARNELL RAGLAND, #191565,

                    Plaintiff,              CIVIL ACTION NO. 10-13484

v.                                    DISTRICT JUDGE AVERN COHN

CITY OF ST. LOUIS, MICHIGAN,     MAGISTRATE JUDGE MARK A. RANDON
ET AL.,
                    Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
DISPOSITIVE MOTIONS (DKT. NOS. 32, 38, 40, 43 AND 47)**

**I. INTRODUCTION**

      This is a prisoner civil rights case.  Proceeding *pro se*, Plaintiff Kevin Ragland challenges the constitutionality of various conditions of his confinement at the St. Louis Correctional Facility ("SLF"), in St. Louis, Michigan.  Specifically, Plaintiff's alleges that: his medical care was inadequate; his legal documents were destroyed and his legal mail improperly processed; a corrections officer sexually assaulted him and the follow-up investigation was deficient; and SLF staff retaliated against him for filing grievances.[1]

      This matter is before the Court on five motions, through which thirteen defendants seek dismissal of Plaintiff's claims: (1) Aaron Alexander, Barbara Finch, James Hogan, Linda Adams, Gregory Corrin, Mitchell Ross, Laura McCormick, Nick Ludwick and Susan Havelka's (a/k/a Susan Duma) motion for summary judgment (Dkt. No. 32); (2) Prison Heal Services, Inc.'s ("PHS") motion to dismiss (Dkt. No. 38); (3) Correctional Services, Inc.'s ("CMS") motion to

_____

[1] The Court recently dismissed Plaintiff's claims against the City of St. Louis, Michigan, which challenged the safety of the drinking water that the City supplied to SLF (Dkt. No. 55).

dismiss (Dkt. No. 40); (4) Victor Fisher and Ryan Dove's motion for summary judgment (Dkt. No. 43); and (5) Charles Sivick's motion for summary judgment (Dkt. No. 47) (collectively "Defendants").  Plaintiff has responded to each of these motions (Dkt. Nos. 48, 49, 51 and 61).[2] For the reasons indicated below, **IT IS RECOMMENDED** that all five motions be **GRANTED** and Plaintiff's claims against Defendants be **DISMISSED WITH PREJUDICE.**  It is also **RECOMMENDED** that Plaintiff's claims against the two remaining unserved defendants be **DISMISSED WITHOUT PREJUDICE.**[3]

## II.  FACTS

Plaintiff is currently serving his fifth year of a 20 year minimum prison sentence with the Michigan Department of Corrections ("MDOC").  Plaintiff's Complaint , filed under 42 U.S.C. § 1983, challenges various conditions of his confinement at SLF, where he was housed from January 12, 2009 until May 25, 2010 (Dkt. No. 1, ¶ 2 (Parties, Jurisdiction & Venue); Dkt. No. 51, p. 8).

### A.  Inadequate Medical Care

Plaintiff's allegation that he was provided inadequate medical care is limited to two paragraphs of his Complaint: he claims that Corrections Officer ("CO") Finch failed to let him out of his cell on March 3, 13, 16, 17, and 20, 2009 to pick up his pain medication, and that on October 15, 2009 an unidentified doctor took his pain medication without a valid reason. Plaintiff also claims, without any factual basis, that CMS and PHS (companies the MDOC

---

[2] Plaintiff filed a response to Sivick's motion on October 12, 2011; the response was received but not docketed by the Clerk's Office.

[3] To date, defendants Tullar and Peppadick, have not not been served.

engaged to provide medical services for its prisoners) "committed a wire fraud transaction," on November 17, 2009 (*id*. at ¶¶ 1-2 (Inadequate Medical Care)).

## B.  Inadequate Law Library

Plaintiff's next series of allegations involve the processing of his legal mail, destruction of his legal documents and his access to the law library (*id*. at ¶¶ 1-6 (Inadequate Law Library)). Plaintiff alleges that prison staff failed to timely process his legal mail on three dates in December of 2009, necessitating a grievance against Warden Ludwick and the library staff for denying him access to the courts.  Plaintiff also filed a grievance against CO Dove and McCormick, a counselor, claiming that Dove destroyed Plaintiff's "legal briefs/exhibits for litigation" and McCormick aided and abetted Dove in this constitutional violation.  Plaintiff alleges that Resident Unit Manager ("RUM") Duma later failed to respond to his letter of complaint about Dove and McCormick's conduct.  Last, Plaintiff claims that he was denied access to the law library for legal research but does not identify an offending party.

## C.  Sexual Harassment and Retaliation

Plaintiff next alleges that CO Ross verbally assaulted him and touched his genital area in a "sexual and provocative" manner on April 7, 2009.  Plaintiff filed a complaint about the incident with the Department of Civil Service but claims that, during the investigation, nobody came to talk to him and the matter was "swept under the rug" (*id*. at ¶ 1 (Inadequate Protection/Sexual Harassment)).  According to Plaintiff, the following series of retaliatory actions ensued: CO Pointdexter prepared a false misconduct report against him on April 14, 2009; CO Ross "harassed" him on May 15, 2009 and wrote a misconduct charge against him on February 8, 2010 (Plaintiff was later found "not guilty" of the charge); Adams, a counselor, filed

a fabricated report against him on June 25, 2009; CO Corrin threatened him and wrote a

retaliatory misconduct report against him on June 26, 2009; CO Tullar wrote a misconduct report

against him on June 29, 2009; Hogan, a counselor, "committed fraud and deceit" in a

memorandum against him on July 23, 2009; CO Fisher stole his personal property on August 8,

2009; CO Sivick wrote a false misconduct charge against him for being in possession of stolen

books on March 8, 2010; and CO Peppedick told Plaintiff that he was going to "get him" for

writing a grievance against Ross (*id.* at ¶¶ 2-11 (Retaliatory Treatment for Filing Grievances)).

In terms of relief, Plaintiff seeks $500,000,000.00 in compensatory damages and

declaratory and injunctive relief.

### III.  ANALYSIS

#### A.  Standard of Review

##### 1.  *Motion to Dismiss*

 Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint for failure to state a claim

upon which relief can be granted.  The Supreme Court has made clear that, "to survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim

for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949,

173 L.Ed.2d 868 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."), quoting *Bell Atlantic v. Twombly*,

550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  Although the pleader is given the

benefit of the doubt as to inferences that can be derived from the allegations, that deference "does

not extend to facts which are not 'well-pleaded.' " *Greenberg v. Compuware Corp.*, 889 F.Supp.

1012, 1015–1016 (E.D.Mich.1995).

Where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993).

### 2. *Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of

-5-

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Plaintiff's claims against each Defendant will be separately discussed, beginning with Plaintiff's claims against the corporate defendants:

## A. Plaintiff's Claims Against CMS and PHS

As discussed above, Plaintiff's Complaint allegations against CMS and PHS are limited to his claim that an unidentified doctor took his medication and a conclusory assertion of wire fraud. Plaintiff's response to CMS and PHS's motions to dismiss attempts to save these claims by offering additional facts that were not alleged in his Complaint.  For example, Plaintiff now explains that a "PHS doctor" replaced his prescription medication (Neurontin) with an alternate prescription (Tegretol), which the doctor knew or should have known is toxic to Plaintiff's liver because he has Hepatitis C (Dkt. No. 48, pp. 2, 5).  Plaintiff further explains that his wire fraud claim is based on the fact that $5.00 was improperly taken from his prison trust account as a result of a disputed visit to SLF's Health Care (*id*. at 6).  Even if Plaintiff was allowed to amend his Complaint to add these factual allegations, dismissal of his claims against CMS and PHS would still be required.

It is well established that an inmate has a cause of action under 42 U.S.C. § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Under *Monell*, in order to establish a § 1983 claim against a corporation, a plaintiff must allege that he suffered deliberate indifference due to a corporate policy, practice, or custom. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th

Cir.1996) (extending the holding in *Monell* to private corporations). A claim relying on the doctrine of respondeat superior will not lie. *See Monell*, 436 U.S. 658, at 691, 98 S.Ct. 2018, 56 L.Ed.2d 611. In order to satisfy the requirements set forth in *Monell*, a plaintiff must "identify the policy, connect the policy to the [corporation] itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir.1987).

Plaintiff's allegations do not state a claim against either CMS or PHS. Instead, Plaintiff's claims involve the specific medical treatment decisions of an unidentified doctor – and are not connected to any policy, custom or practice of CMS or PHS. As alleged by Plaintiff, even a claim against the doctor would fail because it would not rise to the level of an Eighth Amendment violation. *See Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments). As to Plaintiff's claim of wire fraud, there is also simply no alleged connection to a policy, practice or custom of CMS or PHS. Therefore, Plaintiff's claims against CMS and PHS must be dismissed.

## B. Plaintiff's Claims Against Sivick

Plaintiff alleges that Sivick wrote a retaliatory and false misconduct charge against him for possession of stolen books on March 8, 2010 (Dkt. No. 1, ¶ 10 (Retaliatory Treatment for Filing Grievances)). Sivick's motion to dismiss argues that Plaintiff failed to exhaust his administrative remedies, because he did not file a grievance naming Sivick regarding the misconduct.

Plaintiff's response to Sivick's motion does not deny that he failed to exhaust his administrative remedies. Instead, Plaintiff argues that "he was prevented from seeking administrative redress through the prison grievance system," because decisions made in hearings

conducted by hearings officers of the State Office of Administrative Hearings and Rules cannot be grieved.  Plaintiff's argument is unpersuasive.

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted."  42 U. S. C. § 1997e(a).  The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) quoting*, Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.*  The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  *Id.* at 93, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002).

The MDOC provides prisoners with a method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement.  The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy").  The Policy outlines a three-step written grievance procedure.  Plaintiff did not avail himself of this grievance procedure with respect to his claim against Sivick.  Moreover, while it is true that Plaintiff cannot grieve the *decision* of an administrative hearing officer, his Complaint allegation is that the

underlying *misconduct charge* – not the hearing officer's decision– was retaliatory.[4]  Plaintiff could have and was, therefore, required to grieve the alleged retaliatory misconduct charge. *Boyd v. Ray*, 19 Fed. Appx. 209, 2001 WL 1042261 (6th Cir. 2001) (where the plaintiff's claim did not involve the administrative hearing officer's decision but rather an allegation that the underlying misconduct charge was false, he was required to exhaust his administrative remedies) (attached). Plaintiff's failure to properly grieve the alleged retaliatory misconduct charge, thus, requires dismissal of his claims against Sivick.

**C.  Plaintiff's Claims Against Dove and Fisher**

   ***1.  Dove***

   Plaintiff's Complaint alleges that Dove destroyed his "legal briefs/exhibits for litigation" (Dkt. No. 1)  Read generously, Plaintiff's Complaint attempts to allege a claim against Dove for denial of access to the courts and retaliation for exercising his First Amendment right (to file a sexual harassment grievance against Ross).

   Though not alleged in his Complaint, Plaintiff's response to Dove and Fisher's motion explains his version of events.  According to Plaintiff, another prisoner, Steven Mosely, passed the legal documents at issue to Plaintiff by sliding them under his cell door as Plaintiff walked by (Dkt. No. 61, ECF p.18, 22).  Plaintiff and Mosley were co-plaintiffs in a class action regarding alleged contaminated water at SLF, and the document was "a legal draft for a civil lawsuit" (*id*. at ECF p. 4, ¶ 3).  Plaintiff claims the documents were in his possession when Dove confiscated them and should have been returned to him.

---

   [4]  In any event, Plaintiff would have no reason to grieve the decision of the administrative hearing officer because he was found "not guilty."

Dove denies that he retaliated against Plaintiff in any way.  He recalls seeing Plaintiff pick up the documents from a common area outside of another prisoner's cell; the documents had no identification on them and were, therefore, handled as abandoned property and discarded (Dkt. No. 43-2, ¶¶ 6-9 (Dove Affidavit)).

### a. Access to the Courts

For a prisoner to prevail on an access to the courts claim the prisoner "must plead and prove prejudice stemming from the asserted violation.... Plaintiff[] [must] demonstrate. . .actual injury." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.1996).  Actual injury requires a plaintiff to show that his underlying claim was non-frivolous. *See Lewis v. Casey*, 518 U.S. 343, 353, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Additionally, a plaintiff must show that the alleged deprivation was the result of intentional conduct. *Sims v. Landrum*, 170 F. App'x 954, 957 (6th Cir.2006); *Wojnicz v. Davis*, 80 F. App'x 382, 384 (6th Cir.2003) ("to establish an access to the courts violation under § 1983, a prisoner must prove that the violation was intentional, not merely negligent").

Assuming both that Dove could have determined that the "draft" lawsuit belonged to Plaintiff and that Dove intentionally discarded original documents, Plaintiff's Complaint and his response to Dove and Fisher's motion for summary judgment are devoid of any *facts* establishing that the underlying lawsuit was non-frivolous.  Plaintiff's Complaint contains no description or details of the underlying lawsuit and his response to the motion states only, in a conclusory manner, that the underlying litigation was non-frivolous.  Plaintiff's failure to allege facts or demonstrate that his anticipated lawsuit was non-frivolous is fatal to his denial of access to the courts claim.

-10-

### b. *First Amendment Retaliation*

A prisoner's First Amendment retaliation claim must contain three elements: (1) he was engaged in protected conduct; (2) the defendant took an adverse action against him; and (3) that there is a causal connection between the two (i.e., that the adverse action was motivated at least in part by the exercise of the constitutional right). *Thaddeus–X v. Blatter*, 175 F.3d 378 (6th Cir.1999) (en banc). An inmate engages in protected conduct when he files grievances and/or lawsuits. *Noble v. Schmidt*, 87 F.3d 157, 162 (6th Cir.1996). An adverse act is one capable of deterring a person of ordinary firmness from continuing to engage in that conduct. *Thaddeus–X*, 175 F.3d at 398.  Plaintiff has an evidentiary burden to establish that the allegedly retaliatory acts amounted to more than a *de minimis* injury. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir.2002). Moreover, a prisoner's claims of retaliation must be examined with skepticism and particular care because they are "prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983));

Plaintiff has the burden of proving all three elements of his retaliation claim. As to the third element, temporal proximity (or connection in time) alone may establish the causation requirement for retaliation in certain cases. *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir.2004) ("[temporal proximity] may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'") (citation omitted). This is commonly the case when the protected activity and adverse action are "very close" in time. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). However, it has been held that the passage of more than five months between the protected

conduct and alleged retaliatory act is "not enough to raise a genuine issue of material fact as to retaliation based on temporal proximity alone." *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir.2005) (unpublished op.)(attached).

Plaintiff claims that Dove took his legal documents on February 5, 2010 (Dkt. No. 61, ECF p. 18) in retaliation for a sexual harassment complaint he filed against Ross almost ten months earlier.  Other than his subjective beliefs, Plaintiff has not alleged or demonstrated any causal connection between his harassment complaint and the destruction of his legal documents. Since the temporal proximity is insufficient to establish a causal connection as a matter of law, any claim of retaliation against Dove must also be dismissed. *See Mulazim v. Corrigan*, 7 F. App'x 427, 431 (6th Cir.2001) (protected conduct that occurred ten (10) months before the alleged adverse action held insufficient as a matter of law to meet the causal element of a retaliation claim) (attached); *Woodmanse v. Mascorro*, No. 99-1296, 205 F.3d 1343 (Table) (6th Cir. Feb. 2, 2000) (seven (7) month gap between protected conduct and the alleged adverse action held insufficient as a matter of law to meet the causal element of a retaliation claim).

### 2. Fisher

As it relates to Defendant Fisher, Plaintiff's Complaint alleges only that he "did commit a theft of ...[his] personal property for grievances that...[he] wrote against...[Fisher's] coworkers" (Dkt. No. 1, ¶ 7 (Retaliatory Treatment for Filing Grievances)).  Plaintiff's Complaint fails to describe what property items were missing.  However, in his Step I grievance, Plaintiff alleged that Fisher failed to pack the following items, on September 3, 2009: 4 bags of chips/pretzels; 1 tub of cheddar cheese; 8 packages of popcorn; 1 bag of refried beans; 2 bags of cereal; a pickle; chocolate chip cookies, 6 packages of cup-a-soup; 3 hot summer sausage; 1 hot chocolate; 1

cappuccino; 2 deodorants; 5 bars of soap; 2 bags of iced tea; 1 orange drink mix; and, 3 bags of hot peppers.

Fisher denies that he stole anything from Plaintiff (Dkt. No. 43-8, Dove Affidavit).  He claims that, on September 3, 2009, he packed-up all of Plaintiff's property, because Plaintiff had been sent to Administrative Segregation.  As Plaintiff had already been transferred to Administrative Segregation and was unavailable to assist in this pack up, Fisher gathered Plaintiff's possessions, sealed his property in his duffel bag, took the duffel bag to Unit 7 property room, and issued a property receipt for those items.

The Prisoner Property Receipt indicates that Dove packed various hygiene items (*including soap and deodorant*) but no food items (*id.* (*See* Prisoner Personal Property Receipt).  It is also not in dispute that Plaintiff purchased several items like those he claims were stolen (i.e., re-fried beans, pretzels, cookies, a pickel, cereal and tea) on September 14, 2009, *after* Dove had packed-up the items from his cell (*id.* at ECF p. 39).  Perhaps even more telling, however, from the time he arrived at SLF in January of 2009, there is no record that Plaintiff purchased *any* of the following items claimed to have been stolen by Fisher: cheese, sausage, cappuccino, orange drink or hot peppers (*id.* at ECF pp. 29-39).[5]

Plaintiff does not allege that any of the series of retaliatory acts – spanning a nearly 11-month period and involving nine Defendants –  were the result of a conspiracy between Defendants.  Nor is there any allegation that Dove encouraged, aided, or participated in any

---

[5] Confronted with this documentary evidence, Plaintiff now argues that he purchased many of these food items (some perishable) more than nine months earlier at another facility and "was saving them for the yearly religious feast" (Dkt. No. 61, ECF p. 8).  However, under the circumstances, the undersigned finds that no reasonable juror would believe Plaintiff's claim.

purported retaliation by the other Defendants.  As such, only Dove's conduct can be examined in determining whether his allegedly retaliatory acts amounted to more than a *de minimis* injury. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (in the context of a § 1983 or *Bivens* action, each government official is only liable for his or her own misconduct).

Plaintiff has failed to establish more than a *de minimis* injury, requiring dismissal of his retaliation claim against Dove.  While the undersigned is mindful of the Sixth Circuit's caution that "only *inconsequential* [retaliatory] *actions*" should be dismissed as a matter of law, *Bell v. Johnson*, 308 F.3d 594 (6 th Cir. 2002) (quoting *Thaddeus-X*, 175 F.3d at 398 (emphasis added), this is just such a case.  At best (which assumes he did not eat them), Plaintiff did not receive three packages of microwave popcorn, which he purchased within a week of being sent to segregation, Denial of these snacks, particularly were there is no allegation that he was not getting regular prison meals, is clearly inconsequential and not sufficient to sustain his claim as a matter of law. *See, Snyder v. McGinnis*, No. 03-CV-0902E, 2004 WL 1949472 (W.D.N.Y. Sept. 2, 2004) (denial of food on two occasions *de minimis* as a matter of law) (attached); *Maxwell v. City of New York*, 272 F.Supp.2d 285, 301-02 (2003), *vac. in pt. other grounds,* 380 F.3d 106 (2nd Cir. 2004) (delays in processing and providing food to arrestee is *de minimis* injury).  As such, Plaintiff's claims against Fisher must be dismissed.

## D.  Plaintiff's Claims Against Alexander, Finch, Hogan, Adams, Corrin, Ross, Mccormick, Ludwick and Havelka-Duma

### 1.  McCormick and Havelka-Duma

Plaintiff's allegations against McCormick and Havelka-Duma relate to his claim that Dove destroyed his legal documents.  Plaintiff alleges that McCormick "aided and abetted" Dove

-14-

in the destruction of these documents and Havelka-Duma later failed to respond to his complaints about Dove and McCormick.

The undersigned has recommended that Plaintiff's claims against Dove should be dismissed (*see*, § III(C)(1) above). For the same reasons, it follows that Plaintiff's claims against McCormick and Havelka-Duma, arising out of the same incident, should also be dismissed.[6]

### 2. *Alexander*

Other than to list his name in the caption of the Complaint, Plaintiff does not set forth any allegations involving Alexander. Plaintiff's response to Defendants' motion now explains that on March 24, 2009, Alexander "threatened" him "for filing a grievance against his coworker [assumed to be Ross]" (Dkt. No. 51, ECF p. 2). Besides being chronologically unworkable[7], Plaintiff's conclusory allegation does not change the analysis. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (Dkt. 32, Ex. A)

### 3. *Ludwick*

Plaintiff alleges that he filed a grievance against Warden Ludwick for denying him access to the courts. Plaintiff also alleges that his wife, on March 30, 2009, sent a letter to Ludwick, after her phone calls to him concerning her husband's safety went unanswered (Dkt. No. 1, ¶ 1, (Retaliatory Treatment for Filing Grievances)).

---

[6] Alternatively, as discussed below (§D(3)), any claim against Hevelka-Duma must also be dismissed because respondeat superior claims are inapplicable in the context of § 1983 actions.

[7] Alexander's alleged retaliatory threat (March 2009) preceded Ross' sexual harassment and Plaintiff's complaints about it (April 2009).

-15-

According to Ludwick, there is no record of a January 22, 2009, grievance concerning inadequate Law Library access (Dkt. No. 32, Ex. B, Exhibit B, ¶ 4, Ludwick Affidavit). However, on January 22, 2010, Plaintiff did file a grievance against the Librarian, claiming he was denied access to the Law Library. Ludwick maintains that his only involvement in this issue was to respond to Plaintiff's Step II appeal (*id.* at ¶ 7). He also does not recall ever receiving the "notice of liability" letter Plaintiff's wife sent.

Allegations premised on respondeat superior liability are foreclosed in § 1983 actions. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). In *Bellamy v. Bradley*, the Sixth Circuit stated that in order to impose liability on supervisory personnel, a Plaintiff must show more than having brought offending conduct to the attention of supervisory officials:

> In *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir. 1982), we held that the § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Hays*, 668 F.2d at 872-74.

Moreover, a supervisory official's awareness of alleged *illegal* conduct *after the fact* does not provide a basis for imposition of damages under 42 U.S.C. § 1983. *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989). Merely being aware of a prisoner's complaint and failing to take corrective action is insufficient to impose liability on supervisory personnel under § 1983. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988), *cert. den.*, 488 U.S. 1007 (1989).

Other than responding to Plaintiff's grievance and possibly being on notice of additional complaints, Ludwick had no direct involvement in Plaintiff's allegations of wrongdoing (i.e., the

-16-

destruction of his legal documents, inadequate medical care or retaliation, etc.).  Therefore, Plaintiff's claims against Ludwick must be dismissed.

### 4. *Hogan*

Plaintiff alleges that Hogan committed fraud and deceit in a memorandum he wrote concerning Ragland.  Hogan claims that his only involvement in any of the events alleged in Plaintiff's Complaint was that he investigated a Step I that grievance Plaintiff filed a CO for not letting him out of his cell to visit the law library (Dkt. No. 32, Ex. C, ¶ 5,6 (Hogan Affidavit)).  Hogan also denies any retaliation (*id.*).

Plaintiff's response does not challenge Hogan's claim that his only involvement was related to the grievance investigation and Hogan's denial of any retaliatory motive in his investigation.  As such, for the reasons applicable to Ludwick (above), Plaintiff's claims against Hogan must also be dismissed.

### 5. *Adams*

Plaintiff's Complaint alleges that Adams filed a fabricated report against him on June 25, 2009.  His response to Defendants' motion also claims that Adam's "verbally attacked" him for not signing-off on (dismissing as resolved) the sexual harassment grievance he had filed against Ross (Dkt. 51, p. 2).

To date, Plaintiff has failed to specifically identify either the allegedly fabricated report or describe the false statement made by Adams.  Because Plaintiff  has failed to show personal involvement sufficient to impose liability under § 1983, Adams is entitled to dismissal.  Moreover, "as a rule, 'mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.'" *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.),

*cert. denied*, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983) (quoting *Coyle v. Hughs*, 436 F.Supp. 591, 593 (W.D.Okla.1977)).

### 6. *Finch*

Plaintiff's Complaint alleges that Finch failed to let him out of his cell on March 3, 13, 16, 17, and 20, 2009 to pick up his pain medication. Plaintiff does not dispute that all of his medications were kept in his possession *except* Neurontin, which Plaintiff claims was prescribed to help minimize his lower back pain (Dkt. No. 51, p. 3).[8] Plaintiff was to take three Neurontin pills a day: one in the morning, one in the afternoon and one in the evening. Plaintiff claims only that he missed his morning pill on the dates in question (*id.* at 4).

Finch states that she was not at work on March 3, 2009, and Plaintiff seems to accept her representation (*id*. at 3). Plaintiff does, however, object to the Medication Administration Record ("MAR"), submitted with Finch's affidavit, which indicates that Plaintiff did not miss even a single dose of Neurontin in the Month of March (Dkt. No. 32, Ex. L). Plaintiff objects to the MAR because he claims "Finch is not a custodian of the records and cannot lay any foundation" for the MAR (Dkt. No. 51, p. 4).

The undersigned need not reach the issue of whether a proper foundation for the MAR was made because, as alleged by Plaintiff, he missed only four doses of medication out of 93 doses that month (and many hundreds more over the months). Plaintiff does not allege that he missed any other doses during the previous or subsequent months; nor does he even allege that

---

[8] Neurontin is the "trademark for preparations of gabapentin." Gabapentin is an "anticonvulsant that is. . .used as adjunctive therapy in the treatment of partial seizures." *Dorland's Illustrated Medical Dictionary* (31st Ed.) 2007, pp. 764, 1287. According to www.drugs.com, Neurontin is also used in adults to treat nerve pain.

the four missed morning doses caused him to suffer pain.  Under these circumstances, the

isolated incidents of missed medications described in Plaintiff's Complaint are insufficient to

state a claim for deliberate indifference under the Eighth Amendment. *See Mayweather v. Foti*,

958 F.2d 91, 91 (5th Cir.1992) (an occasional missed dose of medication does not, without more,

constitute deliberate indifference); *Bellotto v County of Orange*, 248 Fed.Appx. 232, 237 (2nd

Cir. 2007) (county jail did not show deliberate indifference to medical condition of pretrial

detainee, when he missed doses of medication due to inadequate monitoring, when only effect

was anxiety attack, which was not acute and resulted in no physical injuries); *Brandau v. Price*,

124 F.3d 191 (5th Cir. 1997) (unpublished table decision) (upholding district court's grant of

summary judgment where the plaintiff alleged defendants were deliberately indifferent to his

serious medical needs by depriving him of prescribed psychotropic medication for three days in

February 1991).  Accordingly, Plaintiff's claims against Finch must be dismissed.

### 7. *Corrin*

Plaintiff alleges that he was verbally threatened by Corrin who then wrote a retaliatory

grievance against him on June 26, 2009.  Corrin asserts that he issued Plaintiff the misconduct

violations, on June 26, 2009, because Plaintiff refused to comply with a direct order and used

degrading language in violation of the disciplinary rules (Dkt. No. 32, Ex. H (Corrin Affidavit)).

Plaintiff was found guilty of the misconduct charges after an administrative hearing (*id.*).


Assuming  Corrin threatened to "get" Plaintiff (Dkt. 51, p. 2), ""[a] finding of guilt [on

the misconduct charge] based upon some evidence of a violation of prison rules 'essentially

checkmates [a] retaliation claim."' *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. Nov.

17, 2005) (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994). (Dkt. No. 32, Ex. I).

Since there was some evidence to support Corrin's issuance of a misconduct charge, Plaintiff's

claim for retaliation against Corrin must be dismissed.

### 8. *Ross*

Plaintiff alleges that on a single occasion, April 7, 2009, Ross touched Plaintiff's "genital

area" in a "sexual and provocative" manner.  Specifically, Plaintiff claims that Ross said he

wanted to perform oral sex on Plaintiff and touched Plaintiff's testicles (Dkt. 51, p. 5).  Plaintiff

also alleges that Ross harassed him on May 15, 2009 and "lied" on a misconduct charge he wrote

against Plaintiff on February 8, 2010 in retaliation for Plaintiff's sexual harassment complaint.

Plaintiff does not allege that he was physically injured or raped by Ross or that Ross

reached inside Plaintiff's clothes to touch him.  Nor does Plaintiff allege that the sexual

harassment happened more than once.  Under these circumstances, if true, the isolated incident of

sexual conduct, though certainly inappropriate (and perhaps sufficient to sustain a state tort

action), would not rise to the level of an Eighth Amendment violation. *See Jackson*, 158 F.App'x

at 662 (an isolated and brief alleged sexual abuse – rubbing and grabbing the prisoner's buttocks

– did not rise to the level of cruel and unusual punishment); *Boddie v. Schneider*, 105 F.3d 857,

861 (2d Cir. 1997) (where the plaintiff, a male prisoner, alleged that a female prison guard

squeezed his hand, touched his penis, and made sexually suggestive comments, and on a separate

occasion, told him to take off his sweatshirt and twice pinned him to a door with her body "no

single incident was severe enough to be 'objectively, sufficiently serious' under the Eighth

Amendment).

As to Plaintiff's retaliation claim, as discussed above, there is no alleged causal connection between the incident in April of 2009 and the alleged misconduct filed ten months later. Temporal proximity is lacking as a matter of law. Plaintiff has also failed to provide any details of the alleged harassment of May 2009, which *is* temporally connected the alleged sexual harassment. For these reasons, Plaintiff's claims against Ross must be dismissed.

**E. The Unserved and Unnamed Defendants Should be Dismissed**

Finally, as to the remaining unserved defendants, Tullar and Peppadick, it is recommended that they be dismissed without. "An inmate who brings a civil rights complaint must specifically identify each defendant against whom relief is sought and must give each defendant notice of the action by serving upon him a summons and copy of the complaint." *Reed-Bey v. Pramstaller*, No. 06-10934, 2007 WL 2421422, *2 (E.D.Mich. Aug.23, 2007), citing *Feliciano v. DuBois*, 846 F.Supp. 1033, 1048 (D.Mass.1994). Under Fed.R.Civ.P. 4(m), defendants must be served within 120 days of filing the complaint. Here, Neither Tullar nor Peppadick has been served and this case has been pending for more than a year (without any inquiry from Plaintiff as to whether these defendants have been served); thus, it is recommended that the unserved defendants be dismissed without prejudice. *Mackall v. Doe*, No. 05-60083-AA, 2005 WL 1843449, *1 (E.D.Mich. July 29, 2005), citing *Awdish v. Pappas*, 159 F.Supp.2d 672, 673, n. 1 (E.D.Mich.2001), and *Johnson v. City of Ecorse*, 137 F.Supp.2d 886, 892 (E.D.Mich.2001). This Report and Recommendation will serve as notice to Plaintiff under Rule 4(m).

## IV.  CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that all five dispositive motions (Dkt. Nos. 32, 38, 40, 43 and 47) be **GRANTED** and Plaintiff's claims against Defendants be **DISMISSED WITH PREJUDICE.**  It is also **RECOMMENDED** that Plaintiff's claims against the two remaining unserved defendants be **DISMISSED WITHOUT PREJUDICE.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon                                    
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  January 9, 2012

-22-

<u>*Certificate of Service*</u>

 *I hereby certify that a copy of the foregoing document was served on the parties of record on this date, January 9, 2012, by electronic and/or first class U.S. mail.*

       <u>*s/Melody R. Miles*</u>
       *Case Manager to Magistrate Judge Mark A. Randon*